Our final case for today is number 2012-1308. Please be quiet as you walk out. ARKEMA v. HONEYWELL. Okay, Mr. DeMattea. Thank you. May it please the court, the district court committed reversible error by finding that there are ways to use 1234YF in an automobile air conditioning system that did not infringe the broad message claims of Honeywell's patents. This court should correct that error, grant Arkema its declaratory judgment jurisdiction, and remand for further proceedings. Do you want us to re-find the facts? Is that what you're asking us? No, I'm asking you to correct the error the court said and find declaratory judgment jurisdiction in this case and remand for a trial in America. On the basis that the trial court didn't understand whether there were alternative ways to do the method? Exactly, that the scope of the factual issue. No, it's looking at the claims of this case and correct the error, looking at the breadth of the claims of this case and looking at the court's incorrect conclusion that there are ways to use 1234YF that don't infringe those claims. Let's stay there for a minute. I've got another issue I want to address, but let's stay there for a minute. One of the points you make is that the court was wrong to conclude that there were alternative uses for this product, or non-infringing uses for this product. Is that fact critical or determinative here? In other words, if we say we defer to that fact finding by the court, could we still conclude that the court erred in its ultimate conclusion regarding D.J. jurisdiction? Perhaps, but I think there are two parts to that, to get to that point. The first part is this court looking just at the claims of the suit, and the second part looking at the assertions by Honeywell. If this court interprets these claims and agrees that there may be ways to use 1234YF that don't infringe, then you have to square that against Honeywell's assertions and see if there's still a legal dispute. I don't understand this. I really don't. Honeywell itself has alleged that you're going to sell this stuff to companies, you want to sell this stuff to companies for use in automobile air conditioners. There's no suggestion that you're selling this stuff for some other use. It's right in the Honeywell complaint with respect to the composition patents, and you came back and looked at your answer. You admit that that's what your plan is, and you're not suggesting that you're selling this for some non-infringing use. The fact is you have a plan, you want to sell this stuff to automobile manufacturers for use in air conditioners. Exactly. Right? So what does the potential non-infringing use have to do with it? No one is suggesting that you're selling it for some undefined use. The allegation is you're selling it to be used in automobile air conditioners. Yes, Your Honor. The problem is Honeywell's assertion, even on the composition claim, is just that sale of that product to any automobile manufacturer constitutes an act of indirect infringement. It's based on that assertion that gives us declaratory judgment claims to method claims for the use that are broad enough to cover any use. So we start with the manufacturer. What are we talking about? Other uses? Who cares? I mean, the method claims cover uses in automobile air conditioners. Both parties agree that that's what your plan is. What are we talking about non-infringing uses for? That's our point. That's our appeal. Exactly, Your Honor. There are no non-infringing uses because of the scope of these claims. Who cares whether they're non-infringing uses? The fact is that you are planning, and Honeywell has alleged that you plan, to sell this to automobile manufacturers for use in air conditioners, which is an infringing use. Yes. What do we care that there might be some other hypothetical non-infringing use? We don't. Argument does. It's looking to clear its path for that sale and that use. The district court did, and that's where it erred. It thought that as to the method claims, perhaps there and automobile companies could use it in a manner which would not infringe the method claims. But that's not what the allegation is. The allegation that they're making is that you plan to sell it to manufacturers for use in automobile air conditioners. I agree, Your Honor. That's why we have declaratory judgment jurisdiction for these method claims. It was fairly simple, and where the district court erred was believing that that was not enough, that something more was needed, that perhaps commercial sales had to be done or some further determination had to be made. If I understand it, and I share Judge Dice's confusion a little bit, as I understood the district court, the district court's problem was it couldn't find, among other things, it couldn't find direct infringement of the method patent, and therefore it couldn't find indirect infringement on your part. What's wrong with that? Well, there are two errors for that, Your Honor. First, direct infringement. We're not here to determine direct infringement, but Honeywell's position is that it's a direct infringement when GM tested, for example, Arkema's 1234YF, that was an act of a direct infringement of a narrower composition claim, and therefore the supply, Arkema's supply, an interest in supplying. You're getting caught up in the capillaries. You're trying to sell this stuff to automobile manufacturers to use in automobile air conditioners. Who cares about the samples? You have a plan. You want to sell this stuff. They're letting contracts to people to sell this stuff for use in automobile air conditioners. Everybody agrees. Why are we talking about samples of the thing or possible alternative uses? Everybody agrees. You've got a plan. You want to sell this stuff for use in automobile air conditioners. The sale of that stuff would infringe the patents. Right, the method patents, and therefore we have the declaratory judgment jurisdiction. I agree with you, Judge Steist. Well, wait a minute. Would the sale of the stuff infringe the method patent? Presumably, at least the argument is it would infringe the product patent. Which one is that? That's the 366. Why would sale of the stuff infringe the method patent? Because it's an act of indirect infringement. Ah, but don't you have to show a direct infringement before you can find an act of indirect infringement? What is the direct infringement act for the method patents? That's what I'm trying to understand. Certainly. That's when we look at the claims. For claim 36 of the 882 patent. When GM buys the stuff from you and puts it to the use that they're buying it for, they commit an act of direct infringement, right? Exactly, of the method claims. But they haven't bought it yet. They've bought it from Honeywell, and we want to sign a contract today with GM for their sale and use as well. And what Honeywell is using, it's using these patents to keep us from that sale. And what Arkema is seeking the court to do is to clear its path, to be free from both the composition and method. To the extent you haven't sold it to a manufacturer who hasn't yet put it in his air conditioning systems, there's not been yet a direct infringement of the method patent, has there? I agree, but the declaratory judgment... Tell me what the direct infringement of the method patent has occurred. What direct infringement has occurred to today of the method patent? By sale of Arkema's 1234YF? None. But, none. Hidden. There was no direct infringement of the 1234YF. There was the testing that we had before. That's what the trial court thought too. Go ahead, yes. Right. But, well, putting the testing aside, I'm just saying GM is not buying and using 1234YF from Arkema today. However, the declaratory judgment statute says, and it's very clear, that that act of direct infringement doesn't have to occur first before declaratory judgment jurisdiction is granted. So in other words... For indirect... For indirect infringement. For indirect infringement. Sir? What it means is if you've got a plan of action, and you want to do it, and you're afraid that it would violate the statute, that it would result in infringement, and the plan is clear, and you're entitled to go in and invoke declaratory judgment jurisdiction as to whether your immediately planned course of action would result in infringement. Exactly. And Honeywell's position here has been very clear. Their position is there is no substantial non-infringing use for 1234YF other than to infringe their patent. And their method claims are no different. Why do you keep talking about that? Who cares? Arkema cares, because it's trying to clear it. I think you should move on. Okay. Let me ask you a couple of procedural questions. I'm very confused by the certification here, which we need to accept in the first instance before we can say we have jurisdiction. How does the court say that the underlying case can have no impact on this action, and therefore we can certify it as wholly independent of anything that's occurring below, and then say the case below pending this? If they're so unrelated, then where does the stay come from? There are two parts to that, Your Honor. And the first part is procedural. The district court was aware of the fact that we moved to supplement, and he denied our motion to supplement. And it knew that we had every right to file a second action on the method claims, have it dismissed for the same reasons, and appeal as of right. Right. Well, that goes to the whole question of what standard of review we're to apply. Right. But that's a different issue. Right. And I'm talking about the fact that if these cases are so unrelated that certification is appropriate, then why stay the underlying action? He didn't stay it because they're unrelated. He stayed it because if this court reversed and remanded, it would be much more efficient and practical to have one trial with primarily one prior reference, and consider the full scope of Honeywell's claims against that key prior reference. So, if the low underlying case went forward against, relating to that one reference. Composition. And the composition claims were found invalid. Right. That would move this action, would it not? Theoretically, no. Because they're separate patents and separate claims, Honeywell would still have the ability to assert its method claims against Arkema for indirect infringement based on the sale and use of 1234-Y. And if the composition claims were obvious, the method claims would not be? I would submit we would have a very good summary judgment motion, Your Honor, on the issue. But theoretically, no. They're separate patents and they stand separately. And that's the consequence. And that's why Arkema is trying to have one trial to deal with all the patents that relate to its sale of 1234-Y up to GM. One of the things that puzzled me about this case, counsel, was you had an opportunity to create a direct infringement, which was if, when you tried to sell it to Honda and they said, we, hold us harmless, you said, no, I don't want to do that. All you had to do was hold, was enter into a hold harmless clause, I believe, with Honda, and you would have had a direct infringement problem. Isn't that true? Actually, Your Honor, there may have been other ways as well, but I submit to you by holding Honda harmless for the sale and contract and supply of 1234-Y up would expose Arkema, in the event that these patents are valid, to a large amount of damages. We're talking about contracts in the hundreds of millions of dollars. That's how large the supply is. And Arkema simply wants to clear its rights before it signs such a contract and grants a hold harmless. I'm in my rebuttal time. Okay, thank you, Mr. Sinclair. Mr. Locasio, am I pronouncing that correctly? You are, indeed, Your Honor. So, in your counterclaim with respect to the composition claim, you allege that they are going to manufacture and sell this stuff to original manufacturers to put in cars to be used in the air conditioning system. They admitted that that's what their plans are. Why isn't that sufficient, in and of itself, for them to get a declaratory judgment as to whether this planned, immediately planned course of action is a violation of those patents or not? Here's why it's not. It's not for probably two reasons, Your Honor. First, step back. Honeywell never accused Arkema of infringement. That's a counterclaim. We believe it would be compulsory. No, no, no. The point is that the description of their activity in your counterclaim to which they admit says that they are planning to manufacture this stuff, sell it to automobile manufacturers for use in air conditioning systems within the automobile. Right? That is correct. I don't agree. They've admitted that, Your Honor. I don't think that's their position. I looked at the answer. They specifically admitted it. Their position that the district court was considering, Your Honor, is as follows. You filed this complaint. You had these paragraphs. They came in, and the answer, they admitted it. They admitted that's what their plan is. Here's the paragraph, at least one that I think Your Honor is referring to. Paragraph five, it's A141. It says, In this complaint and this action, this is Honeywell's counterclaim, Arkema has asserted that it's selling or offering to sell 1234YF in the United States and importing it into the United States for use in automobile air conditioning systems. That on its own, Your Honor, is not direct or indirect infringement of the 366 patent. It's paragraphs beginning with the factual background paragraphs 13, 14, 15, and so on, which allege that they are planning to manufacture this stuff, enter into contracts to sell it to manufacturers for use in automobile air conditioning systems. And they admit those allegations. There's no question about it, right? That's what their plan is. Except that on its own would not be an act of direct or indirect infringement. Why not? If they did it, we would have the question, Judge Plager's question, how is General Motors going to use it in the General Motors? You allege that they're going to sell it to General Motors for use in air conditioning systems. That's not the end of the inquiry, Your Honor. Putting it in an air conditioner was not the end of the inquiry. And Arkema's position steadfastly in front of Judge Yon was that's not infringement. And I'll direct the court's attention to several things. Why is that? Here's what they said. First of all, Arkema said lubricants for use in testing were chosen by the customer. The 366 patent. Some of the claims don't have lubricants in them, right? All the claims refer to a heat transfer composition. It's not our 1234YF is not a heat transfer composition, Your Honor. I don't understand what you're saying. Let me back up. All of the claims require that 1234YF be combined with something else. Delivering 1234YF on its own is not an act of indirect infringement unless you know what the automaker's going to do with it, which is why the district court looked at what do we really know. They're going to put it in an automobile air conditioning system. But there's an adopted standard. If you look at your own expert reports in the composition case, which are amazingly illuminating, you say there's a huge market for this. It's an amazingly successful market. This has now become the standard in the industry, and we're going to be selling a gazillion dollars worth of this because everybody wants to use it for this one purpose, and that is the purpose that it's intended for, right? The purpose it's intended for, first of all, there are multiple uses of our 1234YF, and it's not disputed. The Daikin reference that's addressed by Arkema is not for use in an automobile air conditioning system. They don't want to sell it for any other use. They want to sell it to automobile manufacturers. I know they would like to have clarity as to whether or not they can sell it to an automaker. You allege that they want to sell it to the automobile manufacturers for use in automobile air conditioners. They admitted it. What's the problem? What they didn't admit, Your Honor, I think there's a disconnect. What they admitted is we intend or we want to sell it to an automaker in 2010. Now you also remember the court's looking at this. They want to enter the contract now. Well, what they actually have said, Your Honor, is the same day they filed their motion to for sale or pending requests for quotation from any third party. But that's not the point. The point is that they came before the court and in a, I'll call it a judicial confession or confession in the judiciary, they said we intend to infringe this patent and we intend to help others use the product in an infringing manner. That's what we plan to do. Why isn't that enough to get declaratory judgment jurisdiction? What more do you want from them? If they had done that, Your Honor, I think there could still be a question of do we really know from an immediacy standpoint what and when is going to happen. But they wanted to have it both ways. And if you look at how they plan it and you look at their discovery responses, we're on a motion to supplement and Judge Yon has before him what is the actual record in the case. And what he was looking at and what his decision found is as follows. Arkema said A441, they didn't have knowledge if it would be used in the heat transfer composition. All the claims would require that. They also said we don't know what lubricant it will be used with. The 366 patent, which those allegations that Judge Dykes is referring to, required a particular lubricant. 1234YF used with something called a PAG was the question as to whether it would infringe the 366 patent. Arkema, in contrast, didn't admit that. What Arkema said is A441, POE, that's something different than a PAG. It's a polyolefin ester. Lubricants can be used with 1234YF in mobile air conditioning systems with electric compressors. And ultimately then the judge, in his order, said... Do you contend that if they sell this stuff to General Motors for use in automobile air conditioners that that is not an infringement of the method patents? Without knowing what they will combine it with because it's ultimately in every instance combined with a lubricant, Your Honor, we do not know. But some of the claims have specific lubricants in them and some of them don't, right? All of them require... Yes, to your question. All of them require something called a heat transfer composition, which is more... But you can't use that in an automobile air conditioner without a lubricant, correct? Based on the record, Your Honor, I think that's correct, but there's no... The position Arkema took was not, as Your Honor suggests, they admitted what they were doing would fall within the claims. They wanted to have it both ways and to judge, Your Honor... They were saying that what they were doing wouldn't necessarily fall within the composition claims, but they weren't saying that it wouldn't fall within the broader method claims that didn't require a specific lubricant. What they said is they didn't know what the automakers would do so they could not fall within the claim of 366 patent. What do you mean they didn't know? The allegation is they're going to put it in automobile air conditioners. They've admitted it. And just like that alone, the fact that they intended for it to be used in an automobile air conditioner is not enough and they took the position in front of the judge. We know you've admitted that it has to be done with a lubricant. The claims that don't require a specific lubricant, how can it not be infringing for them to sell it to General Motors for use in an automobile air conditioner together with a lubricant? The only claim they point to, Your Honor, that could fall within that is the idea that it's a heat transfer composition. And they themselves have said they don't know if it will be used in a heat transfer composition. They're selling it for a heat transfer composition. Well, but then I suggest what we have... Don't interrupt. Don't interrupt. Pardon me, Your Honor. That it's going to be used in an automobile air conditioner. That's a heat transfer situation. No? Your Honor, the district court judge was looking at the record before him and he was presented with two facts, Your Honor, that contradict that. First, Arkema's position at A441 that they don't know it's going to be used in a heat transfer composition. Meaning, the question as to what and when an automaker will do with it was not sufficiently real or immediate for there to be declaratory judgment jurisdictions. Mr. Lucasio, I understand your argument is it's speculative to say exactly what Arkema is going to be doing and what General Motors is going to be doing. But it's also pretty clear what they want to do and how it all is going to play out. Now, step back just a minute from the viewpoint of judicial efficiency. Doesn't it make an awful lot of sense to throw the method patent into the same litigation as the product patent? Why shouldn't we simply say, look, it's not clear exactly who's doing what to whom, but it's close enough that the trial judge ought to deal with the whole package. Why isn't that a sensible thing? I'll start with the first principle that I think we'd all agree. The fact that it might be more efficient does not confer jurisdiction. But it's also not more efficient given that the district court judge has stayed the 366 patent. That's the whole point. He stays it because they're so interrelated. That doesn't even make any sense. It's so incongruous to me. I mean, this is actually brilliant on your part because you get the judge to stay the one action. You've got the other one delayed. Now you've got two more years to get out in the market and make sure that only you get the orders. All the patents are in re-exam, with claims rejected left and right, including the one I think Judge Dyke's referring to as the broadest claim. And so the logical and most efficient outcome is, given that the claims that are there may or may not survive, given they're all in re-exam, should the case go forward anyway. And so do I contend with it? They can start selling this stuff as they would like to because they're afraid of infringement liability and they'd like a resolution of that in advance. And if you can keep them out of the market, great for you. Your client can continue to sell this stuff without competition. But that's the kernel of Metamune and Presco and all the other cases, that there actually has to be a real and immediate dispute where the court knows. The district court has to decide the counterclaims that were compulsory for infringement or non-infringement. The only actions that actually were alleged are samples in 2009, period. So the allegation, Judge Dyke, only goes to the 2009 General Motors samples, which our position is, don't use it in the United States, don't use it in an automobile, don't use it in an air conditioning system with a PAG, which were the claims of that patent. With respect to where we are now on these claims, what you have is, is it real and is it immediate? And whether it's an efficiency argument or whether we say we think we know what they're going to do, that's why cases from Lange and Tektronix, it's the, how long is it going to be? Are they all tied up in all kinds of litigation over all of this elsewhere? No. Not your only case. Actually, the only other case was a German case that they were selling in Europe, Arkema, declared they wanted to use it in Europe. In Europe it is the standard, Judge O'Malley, or it meets a standard. It's not the only one that can be used to meet that standard. The U.S. But it's the one they, it's the one the industry has adopted. Well, it's actually unclear as to whether that's the case, Your Honor. There are certainly some that intend to use it in Europe. We, Honeywell sued Arkema in Europe, and Arkema's answer was, it's not right, there's no jurisdiction, it was dismissed. So the only other dispute... Well, that wasn't because they weren't ready to do it. It was because it was being pursued and reexamined in Europe, right? Based on this record, the only basis for the dismissal was, it was not right, Your Honor. It was not, it was a standard issue. I presume your whole position with respect to litigation vis-à-vis reexam is different than ours. Well, ours, now, there are a lot of judges that would say, you should stay, it's a separate question. But, ultimately, there's no other act of litigation that should play this question. There's been no threat to a direct or them. Let me ask you one question. Is it not the case that a trial judge has discretion as to whether to accept a declaratory judgment case, even if there is jurisdiction? If there is jurisdiction, the court has discretion to decline that jurisdiction. If there is no jurisdiction, the district court judge does not have discretion to choose to take it. But, even assuming we find the district court has jurisdiction, because there was a real case here, the district court still has discretion to decline the case. Is that right? The court would have discretion both in the charge of judgment context and in the motion to supplement context for other grounds. Correct, Your Honor. Okay. The question Judge John ultimately looked at on this record was, was it a real and immediate dispute? On both grounds, based on what Arkema put forth, their own discovery response. Do you agree that there's declaratory judgment jurisdiction if someone says, I plan to sell this product, and everybody agrees that selling the product would be an infringement, and says, I don't want to do this until I can get a declaratory judgment. Do you agree there's jurisdiction under those circumstances? I agree that if both sides say selling the product would be an act of infringement, and there's a concrete plan that's immediate in its future, as all the cases suggest, then I do. I think that's not the situation, because what happened is, since 2010, Arkema, at every instance, and everything the judge had before him, was they have no current plan. They're unwilling to satisfy what the court has said for an indirect infringer. You either need to have an accusation of direct infringement, or someone needs to accuse you, or you have to indemnify. And they had choices, and you don't get to just want to know whether you can sell something. Those are the only circumstances you think under which jurisdiction could arise? I mean, what about Dr. Oster and Marriott? All three judges in that case unanimously agreed that he had standing, and that in that case, that it was sufficiently real and immediate. And all he did was say, I've done some research, and I'm prepared to go forward. And they distinguished that minimal activity from someone who just said, well, I might go forward in the future. These people have built a plan. They've said they're prepared to go forward. Why is that different from Marriott? Dr. Oster, in that case, would be the direct infringer, and he pled, I'm going to satisfy and do everything that's required to perform the acts of infringement. That's not this case. This case, like the Matthews case this court considered several months ago, and Aris, Arkema could sell 1234YF and make 1234YF, and it would not be an act of infringement of any of these patents. No one has alleged it would be. There are. It ultimately is an indirect infringer. They don't contend they're a direct infringer. They can't sell it for use in automobile air conditioners without infringing, right? They can. How? They can because it depends on what the automaker chooses to do and how they design it. They choose to put it in an automobile air conditioner. And it was Arkema's position below that Judge Young found that the parties admitted to their oral argument and their discovery responses said that is non-infringing. That's in the district court's order because it was also in the discovery responses. If Arkema had said, to Judge Plager's question, selling it alone and putting it in an air conditioning system would be a direct infringement, and then ergo we'd be the indirect infringer, then I think we would be in your situation. But they didn't say that. They said the opposite. They said it will not be, it depends, and we don't know what they're going to do with it. And that's why, ultimately, when the judge looked at it, he said, the language was, how can I know how they're going to use it and when they're going to use it? And he said, Honeywell couldn't assert these patents because we didn't know enough. We don't have jurisdiction. I think you're out of time. Thank you, Mr. Lippert. Thank you, Your Honor. Mr. DiMatteo, you've got just shortly two minutes. I'll be brief, Your Honor. Mr. DiMatteo, one quick question and then we'll go on to your answers. Do you agree that the trial judge ultimately retains discretion as to whether to take a declaratory judgment action even if he has jurisdiction? Yes. So that the most we could do to respond to your petition would be to send it back to the judge and say something like, you're mistaken about your jurisdiction, but you still have to decide what you want to do about taking the declaratory. We can't order him to hear a declaratory judgment case, can we? No, you can't. And yes, that would be your instruction and the court has already indicated. Well, our case is about abuse of discretion and not taking the case. Yes. Well, the judge has already indicated. It's not before us. Right. And the judge has already indicated he would like, if he does have jurisdiction, to have one trial. And that's in his order as well. So he understands the practicality of having one trial. So you concede that if you sell this to automobile manufacturers for purposes of using it in the refrigeration system, the air conditioning system, in the automobiles, that those manufacturers would then be infringing the method package? Yes, Your Honor. Certain claims, yes. Certainly. And that's why we have jurisdiction. The broader claims. The broader claims. Assuming they're valid. We believe they're not valid. That's why we sit here and say this today. And that's the interesting part about argument. So you're responding to your friend's argument on the other side that you denied infringement. Is that you only denied infringement to the extent that you couldn't guarantee that they would use the lubricant that was expressly described, expressly claimed in some of the narrower claims? Exactly, Your Honor. And that's where the confusion began and should be cleared. It's interesting when you argue declaratory judgment jurisdiction, how the accused infringer is saying he's infringed and the patentee says you're dumbed. But we're comfortable with saying on the broad claims that's the case. And with the relevant inquiry here, it's not Arkema's defenses, it's Honeywell's assertions. Their complaint in Germany, their counterclaim in this case, their interrogatory answers, and their position to their experts is at sale at 1234YF by Arkema is an act of indirect infringement. Full stop. And with that, we're entitled to declaratory judgment jurisdiction. Thank you. Thank you, Mr. DeMatteo. Thank both counsel. The case is submitted. And that concludes our session for today. All rise. Thank you. Your Honor, the court is adjourned until tomorrow morning at 10 a.m.